IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-02180-MJW-PAC

ANWAR HUSSEIN,

      Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO,
UNIVERSITY OF COLORADO AT COLORADO SPRINGS,
PAM SHOCKLEY-ZALABAK, THE CHANCELLOR OF THE UNIVERSITY IN HER
OFFICIAL CAPACITY, and
TONY TEDORE, IN HIS INDIVIDUAL CAPACITY,

      Defendants.

---

## ORDER ON DEFENDANT TONY TEDORE'S
## MOTION FOR SUMMARY JUDGMENT
## (Docket No. 70)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

      This case is before this Court pursuant to the Order of Reference Pursuant to 28

U.S.C. § 636(c) filed on August 4, 2005, and the parties' unanimous consent to

disposition of this action by a United States Magistrate Judge.

## I.  FACTUAL BACKGROUND

      Plaintiff is a male of Syrian/Arabic descent.  Plaintiff was hired on April 1, 2001,

as an at-will employee in the position of Accountant I by Defendant Tony Tedore, the

controller/budget officer for the University of Colorado at Colorado Springs.  Plaintiff's

immediate supervisor was Milagros Togade, the manager for the accounting office.  Ms.

Togade's immediate supervisor was Defendant Tedore.  On July 26, 2001, Plaintiff

applied for an open Accountant II position and passed the written test for that position. The Accountant II position would have been a promotion for Plaintiff.  Defendant Tedore and Ms. Togade interviewed Plaintiff for the Accountant II position.  Plaintiff was not offered the Accountant II position.  On September 4, 2001, Defendant Tedore and Ms. Togade met with Plaintiff.  Plaintiff filed an internal grievance with the University on or about October 16, 2001.  On October 22, 2001, Defendant Tedore and Ms. Togade again met with Plaintiff and at that meeting Plaintiff was given a document titled "Anwar Hussein, Performance Issues."  On October 23, 2001, Plaintiff provided his written response to this document to Defendant Tedore.  Plaintiff filed a second internal grievance with the University on or about October 24, 2001.  On October 31, 2001, Defendant Tedore terminated Plaintiff's employment while he still was a probationary employee.

Defendant Tedore alleges that Plaintiff was fired because he failed to perform at the level required by his position.  He maintains that he first became aware of Plaintiff's performance issues in July 2001.  He further maintains that one of the purposes of the September 4, 2001, meeting with Ms. Togade and Plaintiff was to discuss Plaintiff's performance deficiencies.  Defendant Tedore asserts that he sought authorization to terminate Plaintiff's employment on October 25, 2001.

Plaintiff alleges that from the commencement of his employment with the University through September 11, 2001, he was never advised of any performance deficiencies.  However, he contends that Defendant Tedore's attitude toward him changed dramatically after the September 11, 2001, terrorist attacks.  Plaintiff

specifically asserts that Defendant Tedore and Ms. Togade began to create documents related to alleged performance issues and that, after he filed the second of his two grievances in October 2001, Defendant Tedore came to Plaintiff's office and said "Two grievances!  This is like Osama hitting the two towers.  All you Arabs are nothing but a bunch of fucking terrorists."  Plaintiff also asserts that on October 31, 2001, when he was fired, Defendant Tedore stated "You're out of this office and hopefully soon you and the rest of the Arabs out of this country."

## II.  PLAINTIFF'S CLAIMS AGAINST DEFENDANT TEDORE

Plaintiff asserts five claims for relief against Defendant Tedore.  Those claims are:  (1) a Title VII discrimination claim; (2) an equal protection claim pursuant to 42 U.S.C. § 1983; (3) a discrimination claim pursuant to 42 U.S.C. § 1981; (4) a discrimination claim pursuant to the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-401, et seq.; and (5) a due process claim pursuant to 42 U.S.C. § 1983.

## III.  PENDING MOTION

On May 3, 2006, Defendant Tony Tedore's Motion for Summary Judgment Pursuant to F.R.C.P. 56(c) (docket no. 70) was filed.  On May 30, 2006, Plaintiff filed his response to Defendant Tedore's motion for summary judgment.  On June 14, 2006, Defendant Tedore filed his reply.  The Court has carefully considered the motion for summary judgment, the response, the reply thereto, and the applicable case law and Federal Rules of Civil Procedure.  The Court now being fully informed enters the following order.

## IV.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id. at 1146-47 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).

## V.  DISCUSSION

Defendant Tedore moves to dismiss Plaintiff's claims against him for a number of reasons.  The Court will address each claim in turn.

### A.  Title VII Discrimination Claim.  Plaintiff first claims that he was terminated

4

from his job in violation of his rights pursuant to Title VII.  Defendant Tedore argues

that summary judgment should be granted in his favor on the Title VII claim because he

is being sued in his individual capacity and Title VII claims may be asserted only

against an employer, not an individual supervisor.  See Haynes v. Williams, 88 F.3d

898, 901 (10th Cir. 1996).  Plaintiff concedes this point.  Therefore, summary judgment

will be entered in favor of Defendant Tedore on Plaintiff's Title VII claim.

     **B.  42 U.S.C. § 1983 Equal Protection Claim**.  Plaintiff's second claim for relief

is asserted pursuant to 42 U.S.C. § 1983.  Plaintiff maintains in this § 1983 claim that

the termination of his employment violated his right to equal protection under the

Fourteenth Amendment to the United States Constitution.  A person's right to equal

protection is violated when the government or its officials treat him or her differently

than others who are similarly situated.  See City of Cleburne, Tex. v. Cleburne Living

Ctr., 473 U.S. 432, 439 (1985); Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996).

     Defendant Tedore argues that the equal protection claim should be dismissed

because it is based solely on the alleged violation of Title VII.  In support of this

argument he contends that Plaintiff may assert claims pursuant to both Title VII and §

1983 only if the § 1983 claim is based upon a right that is independent from the rights

protected by Title VII.  Plaintiff argues that his equal protection claim is independent

from the Title VII claim.

     In Notari v. Denver Water Dept., 971 F.2d 585 (10th Cir. 1992), the Tenth Circuit

described the independence requirement by discussing a prior case, Drake v. City of

Fort Collins, 927 F.2d 1156 (10th Cir. 1981):

> In that case, which involved a Title VII disparate treatment plaintiff who also sought relief under §§ 1981 and 1983, we held that a Title VII plaintiff who "alleges that his . . . equal protection rights were violated, and requests remedies for those alleged violations under . . . [§] 1983" has stated an independent basis for that claim. Thus, under <u>Drake</u>, the basis for a § 1983 claim is "independent" from Title VII when it rests on substantive rights provisions outside Title VII-that is, when it rests on a constitutional right or a federal statutory right other than those created by Title VII. We emphasize that the basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII. For example, a § 1983 claim of racial discrimination is independent of a statutory disparate treatment claim arising out of the same set of facts because the § 1983 claim is substantively grounded in the Equal Protection Clause of the Fourteenth Amendment, whereas the disparate treatment claim flows from Title VII. Because the substantive legal standards that govern these claims emanate from different sources, as long as the substantive legal bases for the claims are distinct, our "independence" requirement is satisfied and Title VII does not foreclose an employment discrimination plaintiff's § 1983 claim.

<u>Notari</u>, 971 F.2d at 587 (internal citation omitted).

In the instant case, Plaintiff specifically asserts a violation of his constitutional right to equal protection. Although the constitutional discrimination claim and the Title VII claim arise out of the same facts, those claims are independent of one another for the reasons discussed in <u>Notari</u>. Therefore, Defendant Tedore's motion for summary judgment on the equal protection claim will be denied.

**C. 42 U.S.C. § 1981 Discrimination Claim**. Plaintiff's third claim for relief is a discrimination claim pursuant to 42 U.S.C. § 1981. Section 1981 prohibits discrimination on account of race in "the making, performance, modification, and

6

termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

Defendant Tedore argues that Plaintiff's § 1981 claim should be dismissed for three reasons.  First, Defendant Tedore contends that the § 1981 claims fails because Plaintiff alleges that he was discriminated against on the basis of national origin rather than race.  Defendant Tedore next argues that the § 1981 claim fails because Plaintiff did not have an employment contract with the University.  Finally, Defendant Tedore seeks dismissal of the § 1981 claim because Plaintiff fails to establish a violation of § 1981 that is independent from his Title VII claim.  The Court rejects this third argument for the same reasons just discussed in connection with Plaintiff's equal protection claim.  See Notari, 971 F.2d at 587.

In support of his argument that Plaintiff's § 1981 claim against him should be dismissed for failure to allege racial discrimination, Defendant Tedore points to Plaintiff's deposition testimony that he was fired because of his national origin and for no other reason.  However, Defendant Tedore also acknowledges that "the line between national origin discrimination claims under Title VII and racial discrimination claims under § 1981 is 'not a bright one.'" Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387 n.7 (10th Cir. 1991) (citing Saint Francis College v. Al-Khazraji, 481 U.S. 604, 614 (1987) (Brennan, J., concurring)).

Plaintiff contends that the discrimination he allegedly faced was based on the fact that he is an Arab.  The Supreme Court has held that a college professor would make out a case pursuant to § 1981 if he could prove that he was subjected to

7

intentional discrimination based on the fact that he was born an Arab.  Saint Francis College, 481 U.S. at 613.  Therefore, the Court finds that Plaintiff adequately states a claim of racial discrimination pursuant to § 1981 in this action.

In support of his argument that Plaintiff's § 1981 claim should be dismissed because Plaintiff did not have an employment contract with the University, Defendant Tedore points to Plaintiff's deposition testimony that his employment with the University was employment at will.  Plaintiff concedes that he did not have a written employment contract with the University.  Instead, he argues that his employment relationship with the University necessarily included the right to be free from violations of federal and state law by the University.

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  Domino's Pizza, Inc., v. McDonald, 126 S. Ct. 1246, 1250 (2006).  In other words, Plaintiff "cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'"  Id. at 1252.  Therefore, Plaintiff must identify an impaired contractual relationship under which he had rights in order to assert a claim pursuant to § 1981.  See id. at 1249.

The Court agrees with Defendant Tedore that Plaintiff fails to identify any contractual relationship that gave him rights.  Therefore, Defendant Tedore is entitled to summary judgment on Plaintiff's § 1981 claim.

**D.  Colorado Anti-Discrimination Act Claim**.  Plaintiff's fourth claim is asserted

pursuant to the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-401, et seq.

The Colorado Anti-Discrimination Act closely parallels the language of Title VII.  See

Colorado Civil Rights Comm'n v. Big O Tires, Inc., 940 P.2d 397, 399 (Colo. 1997).  As

a result, the Colorado Supreme Court adopted the analytical framework for Title VII

claims set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), but

modified "the language of the McDonnell Douglas framework in order to accommodate

various kinds of employment decisions and various forms of discrimination."  Colorado

Civil Rights Comm'n, 940 P.2d at 400.

In order to establish a prima facie case of discrimination pursuant to the

Colorado Anti-Discrimination Act, Plaintiff must show that: (1) he belongs to a protected

class; (2) he was qualified for the job at issue; (3) he suffered an adverse employment

decision; and (4) the circumstances give rise to an inference of unlawful discrimination.

Id. at 400.  If Plaintiff establishes a prima facie case of employment discrimination, "the

burden of production shifts to the employer to articulate some legitimate,

nondiscriminatory reason for the employment decision."  Id. at 401.  If the employer

meets its burden, Plaintiff then must "be given a full and fair opportunity to demonstrate

by competent evidence that the presumptively valid reasons for the employment

decision were in fact a pretext for discrimination."  Id.  Plaintiff can withstand summary

judgment and is entitled to go to trial if he "succeeds in showing a prima facie case and

presents evidence that the defendant's proffered reason for the employment decision

was pretextual–i.e. unworthy of belief."  Randle v. City of Aurora, 69 F.3d 441, 451 (10[th]

9

Cir. 1995).

Although Defendant Tedore states in his reply that Plaintiff cannot establish a prima facie case of discrimination, Defendant Tedore's arguments are limited to whether Plaintiff has met his burden of showing that the proffered reason for terminating Plaintiff's employment is pretextual.  Therefore, like Defendant Tedore, the Court will focus on the issue of pretext to determine whether summary judgment is appropriate.  In any event, the Court finds that Plaintiff has established a prima facie case of discrimination on the basis of his national origin.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted).  However, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

Defendant Tedore's proffered reason for terminating Plaintiff from his position as an accountant is that Plaintiff was terminated because of his measured inadequate performance.  Plaintiff, however, has presented evidence that the proffered reason was pretextual.  Plaintiff has presented evidence that Defendant Tedore made discriminatory statements regarding Arabs around the time when he fired Plaintiff; that no negative information concerning his performance was conveyed to him prior to

10

September 11, 2001; that he was encouraged to take a test for a promotional position prior to September 11, 2001; and that Defendant Tedore's attitude toward Plaintiff changed dramatically after September 11, 2001.  Therefore, the Court finds that a genuine issue of material fact exists regarding pretext.  As a result, Defendant Tedore's motion for summary judgment on the Colorado Anti-Discrimination Act claim must be denied.

**E.  42 U.S.C. § 1983 Due Process Claim**.  Plaintiff's fifth and final claim is a due process claim pursuant to § 1983.  Plaintiff specifically claims that he was denied both procedural and substantive due process.  The Fourteenth Amendment to the United States Constitution protects citizens from the deprivation of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

Archuleta v. Colorado Dept. of Insts, Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991).

The Court must engage in a two-step inquiry to determine whether Plaintiff was denied procedural due process:  (1) did Plaintiff possess an interest protected by due process? and, if so, (2) was Plaintiff afforded an appropriate level of process?  See Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).  Plaintiff argues that he had a liberty interest and a property interest in his employment with the University.

The concept of liberty in the context of public employment involves two particular interests: (1) the protection of an employee's good name, reputation, honor, and integrity; and (2) the employee's freedom to take advantage of future employment opportunities. See Miller v. City of Mission, 705 F.2d 368, 373 (10th Cir. 1983). In the instant action, Plaintiff fails to allege facts that could support a claim that he was deprived of a constitutionally protected liberty interest.

The existence of a protected property interest depends on an independent source like state law because property interests are not created by the Constitution. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Whether Plaintiff has a constitutionally protected property interest in his employment with the University depends on whether he has "a legitimate expectation of continued employment." Hennigh, 155 F.3d at 1253. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

The Court agrees that Plaintiff did not have a legitimate expectation of continued employment with the University because he was a probationary employee. See Walker v. United States, 744 F.2d 67, 68 (10th Cir. 1984). Therefore, Defendant Tedore is entitled to summary judgment on the procedural due process claim.

Plaintiff claims that he was denied substantive due process because he was fired for an arbitrary reason. Plaintiff's substantive due process claim also fails for lack of a constitutionally protected liberty or property interest. "In order to present a claim of

12

denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." <u>Brenna v. Southern Colorado State College</u>, 589 F.2d 475, 476 (10th Cir. 1978).  Therefore, because the Court already has determined that Plaintiff does not have a constitutionally protected liberty or property interest in his employment with the University for the purposes of his procedural due process claim, Defendant Tedore also is entitled to summary judgment on the substantive due process claim.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Defendant Tony Tedore's Motion for Summary Judgment Pursuant to F.R.C.P. [sic] 56(c) (docket no. 70) is granted as to Plaintiff's claims under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 procedural and substantive due process claims; and denied as to Plaintiff's claims under 42 U.S.C. § 1983 equal protection and Colorado Anti-Discrimination Act claims.

Dated: August 24 , 2006                              S/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                              United States Magistrate Judge